**SIGNED this 18th day of October, 2013**

_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TENNESSEE**
**WINCHESTER DIVISION**

In re:

LADY BUG CORPORATION,

    Debtor.

No. 13-14295
Chapter 11

**MEMORANDUM**

    This matter came on for hearing on October 7, 2013, on creditor CadleRock Joint Venture II, LP's Motion to Dismiss and Motion for Relief from Stay and Abandonment. [Doc. No. 14]. The debtor is a corporation whose sole purpose is to act as a trustee for a trust containing two parcels of income-producing real estate. The movant holds a judgment lien on those two parcels that is superior to the debtor's interest.  The court finds that the two parcels of

real property in question are not property of the estate. Without any estate property to administer, nothing exists to be reorganized. Further, there is no evidence of an income stream from a trust agreement owed to the debtor that could be used to pay its expenses as trustee. Under these circumstances, the court will grant the motion to dismiss. Having dismissed the case, the motion for relief is moot.

These are the court's findings of fact and conclusions of law made pursuant to Fed. R. Bankr. P. 7052 as made applicable to contested matters by Fed. R. Bankr. P. 9014.  The court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334 and §§ 157(b)(2)(A) and (G).

I.   Facts

a.  **Original Judgment**

On June 8, 2005, Fifth Third Bank ("Fifth Third") obtained a judgment in Davidson County Chancery Court in the amount of $337,589.80 against Laddie Hillis. [Hr'g Exhibit Exhibit 1, Entry of Judgment, at 1]. On October 24, 2005, Fifth Third Bank assigned the judgment to Cadleway Properties, Inc., who in turn assigned the judgment to CadleRock Joint Venture II, LP ("CadleRock") on November 7, 2007. [Hr'g Exhibit 2, Assignment of Judgment, at 1]. CadleRock recorded the judgment in Warren County, Tennessee on June 15, 2010. [Hr'g Exhibit 3, Assignment of Judgment, at 1]. Since 2005, the judgment has been accruing interest at the statutory rate of 10%.

b.  **Chain of Title for the Two Parcels**

The debtor is not a direct obligor on the Fifth Third debt. CadleRock is its creditor because of the judgment lien which was recorded and attached to Mr. Hillis' real property. Through a series of transfers originating with Mr. Hillis' mother and brother described below, the debtor contends that it became the current owner of two pieces of real estate that are subject

2

to the judgment lien. It lists the amount of CadleRock's lien at $582,933.85 and the value of the property securing that claim at $1,603,800.00.

The relevant links in the chain of title begin with Mr. Hillis' inheritance of the two parcels from his mother and brother through intestate succession. [Hr'g Exhibit 3, at 7]. Mr. Hillis lost his interest through a divorce. On April 12, 2010, Mr. Hillis and his then-wife, Susan Dunlap, entered into a Marital Dissolution Agreement ("MDA") and filed it in their divorce action which was pending in the Davidson County Circuit Court. Pursuant to the MDA, Mr. Hillis' right, title, and interest in the two parcels of property in Warren County were to be divested from him and vested in Ms. Dunlap. The MDA was incorporated into the parties' Final Divorce Decree, which the circuit court approved on August 23, 2010. [Hr'g Exhibit 4, Final Divorce Decree, at 2]. On December 23, 2010, five months after the judgment lien was recorded, the Final Divorce Decree was recorded in the Warren County Register's Office.

One of the parcels transferred to Ms. Dunlap is a 560 acre farm located at 334 Zera Hillis Road in McMinnville, Tennessee. The land also includes a house where Ms. Dunlap's son resides during the week and where Ms. Dunlap resides over the weekend. At the October 7 hearing, Donald Hillis,[1] an auctioneer, testified that this property is worth $1.6 million dollars. The appraiser also testified that there is timber on the farm that could generate an additional $300,000 in revenue. Testimony of Donald Hillis, October 7, 2013 at 11:50 a.m.

The second parcel is an office building located at 115 W. Court Square, McMinnville, Tennessee. At the October 7 hearing, the auctioneer testified that the office building is worth $53,000. Testimony of Donald Hillis, October 7, 2013 at 11:49 a.m. Ms. Dunlap testified that she rented the office building to an attorney, who recently vacated the premises. She hopes to find another tenant for the space. Testimony of Susan Dunlap, October 7, 2013 at 12:11 p.m.

---

[1] The auctioneer is not related to Laddie Hillis.

3

Debtor's schedules list the two properties as its only assets, although at the hearing Ms. Dunlap testified that the debtor also owns a recently opened checking account. Testimony of Susan Dunlap, October 7, 2013 at 12:19 p.m. Ms. Dunlap also testified that she receives income from leasing a portion of the farm to soybean farmers, and the lease is in her name personally. Testimony of Susan Dunlap, October 7, 2013 at 12:10 p.m. The debtor's bankruptcy schedules did not list any unexpired executory contracts or leases. Ms. Dunlap did testify that she has maintained the income from the farm and office building in a separate checking account, although this account is in her individual name. Testimony of Susan Dunlap, October 7, 2013 at 12:16 p.m.

    c.   **Creation of the Debtor and the Trust**

After her divorce, Ms. Dunlap created a revocable trust (the BLF Land Trust, referred to as "BLF") and a corporation (The Lady Bug Corporation, referred to as "Lady Bug," the debtor in this case) to protect her assets, including the two parcels of real property, and to shield herself from liability. The attorney who advised and assisted Ms. Dunlap in creating these entities, Mr. Robert Notestine III, testified at the October 7 hearing. He stated that he registered these entities with the Tennessee Secretary of State in December of 2010. Testimony of Robert Notestine, October 7, 2013 at 11:23 a.m. He testified that under debtor's Articles of Incorporation and BLF's trust agreement, Ms. Dunlap alone is vested with the authority to make decisions on behalf of the entities; she is the sole shareholder and president of Lady Bug and the settlor and sole beneficiary of the BLF Land Trust. Testimony of Robert Notestine, October 7, 2013 at 11:25–11:27 a.m.

On December 24, 2010, per Mr. Notestine's suggestion, Ms. Dunlap conveyed her interest in the two parcels via quitclaim deed to "Lady Bug Corporation, Trustee for BLF Land

4

Trust." [Exhibit 5]. Mr. Notestine testified that under the terms of the trust agreement and the quitclaim deed, the debtor alone has the authority to convey the parcels in its capacity as trustee. However, Mr. Notestine also admitted upon questioning by the court that Ms. Dunlap has the power to replace the debtor as the trustee without changing BLF's ownership of the property. Ms. Dunlap may also revoke the trust as the settlor of a revocable trust at any time. Testimony of Robert Notestine, October 7, 2013 at 12:30 p.m. She has not revoked the trust at this time.[2]

### d. Enforcement of Judgment

On February 16, 2011, CadleRock filed suit in the Chancery Court of Warren County to enforce its judgment lien on the two parcels. It named everyone in the chain of title, including Mr. Hillis, Ms. Dunlap, Lady Bug in its capacity as trustee, BLF, and Highland Rim Energy, LLC, an oil and gas lessee, as defendants. The Chancery Court granted CadleRock's motion for summary judgment to allow CadleRock to enforce its judgment. The court specifically held that the properties were conveyed to Ms. Dunlap after CadleRock's judgment had been recorded and were, therefore, conveyed to her and her successors subject to CadleRock's lien. Ms. Dunlap, Lady Bug and BLF appealed the grant of summary judgment to the Tennessee Court of Appeals, which affirmed the trial court's ruling in an opinion filed on October 18, 2012. [Hr'g Exhibit 3, at 8].

Following the ruling in the appeal, CadleRock scheduled a Chancery Court/Sheriff's Sale of the properties for August 31, 2013. On August 29, 2013, debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, and CadleRock canceled the sale of the parcels.

### e. Ownership of the Parcels

---

[2] The court has relied on the testimony of Mr. Notestine and Ms. Dunlap regarding the contents of the trust agreement. A copy of the trust agreement was not included as one of the documents offered as evidence at the hearing.

5

The language of the conveyance in the Quitclaim Deed from Ms. Dunlap to BLF has created confusion as to the actual owner of the parcels. In its opinion, the Tennessee Court of Appeals noted,

> It is not clear if the conveyance was to Lady Bug Corporation in the capacity as trustee for BLF Land Trust or in its own behalf. The Quitclaim deed identifies "Lady Bug Corporation, Trustee for BLF Land Trust" as the "grantee", while also listing "The Lady Bug Corporation" and "The BLF Land Trust, Trustee" as the "New Owner". Both defendants are parties to this appeal and are represented by the same counsel; no issue is presented in this case as a result of the lack of clarity.

*CadleRock Joint Venture II, LP v. Dunlap*, No. M2011-02702-COA-R3_CV, 2 n.2 (Tenn. Ct. App. Oct. 18, 2012). Unlike the state court appeal which involved the priorities of the parties' claims, the ownership of the two parcels is central to this court's analysis. Only Lady Bug is a debtor before this court. Neither Ms. Dunlap nor BLF has filed for relief. The debtor continues to argue that Ms. Dunlap controls the debtor and BLF and the court therefore should disregard the existence of three different entities. The court declines to consolidate BLF and the debtor. Despite lapses by Ms. Dunlap in titling the names of contracts and bank accounts in the correct names, she does appear to have maintained separate accounts for the income-producing operations of the two parcels and maintained the corporation and trust as separate entities with the help of counsel. The court has only one debtor before it and no motion to consolidate to consider.

## II. Analysis

### a. Relief from Stay and Abandonment

The Court first turns to CadleRock's Motion for Relief from Stay and Abandonment. Bankruptcy Code Section 362(a)(2) prevents enforcement against the debtor or against property of the estate of a judgment obtained before the commencement of the case. CadleRock argues

that the stay should be lifted for cause, as allowed by 11 U.S.C. § 362(d)(1) to permit it to enforce its judgment against the properties. The Court does not reach the merits of the "cause" argument because it finds that the parcels are not property of the estate, and therefore not covered by the automatic stay.

The quitclaim deed by which Ms. Dunlap allegedly transferred her interest in the Property reads "Susan Dunlap (hereinafter referred to as the 'Grantor') does hereby quitclaim, bargain, sell and convey unto Lady Bug Corporation, Trustee for the BLF Land Trust (hereinafter referred to as the 'Grantee') all of Grantor's interest in the following described real estate . . . ." At the October 7 hearing, the debtor in effect attempted to pierce its own corporate veil by arguing that Ms. Dunlap, the debtor, and the BLF Land Trust are one in the same, and that the debtor therefore owns the properties. The court disagrees that the three entities may be treated as one. Thus, the court must determine what interest this debtor has in the two parcels.

When a bankruptcy proceeding implicates property issues, state law controls. *Butner v. United States*, 440 U.S. 48, 55 (1979). Thus, the court turns to Tennessee law to determine which entity is the true owner of the property. Tennessee law provides that a quitclaim deed containing the language "I hereby quitclaim to A. B. all my interest in the following land . . ." validly transfers the interest in the property without further inquiry by the court. Tenn. Code Ann. § 66-5-103(2). The quitclaim deed by which Ms. Dunlap transferred her interest to the debtor as trustee of BLF contained this formula, rendering the transfer effective. Yet the question of to whom she transferred the property still remains.

Ultimately, courts construe language in a deed to give effect to the grantor's intent. *In re Lawson*, No. 10-11001, 2011 WL 1167115 (Bankr. E.D. Tenn. Mar. 28, 2011) (citing *Barber v. Westmoreland*, 601 S.W.2d 712, 714 (Tenn. Ct. App. 1980)). In the debtor's case, the face of the

deed plainly shows that Ms. Dunlap intended to transfer the property to be held in trust. The deed also clearly states that Lady Bug's only interest in the property is in its capacity as trustee for BLF. Bankruptcy Code Section 541(d) provides:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

The Supreme Court specifically interpreted this provision as excluding property a debtor holds in trust from the bankruptcy estate. *Beiger v. IRS*, 496 U.S. 53, 59, 110 S. Ct. 2258, 2263 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"). Given the deed's plain assertion that the debtor held title to the Property only as trustee and Mr. Notestine's and Ms. Dunlap's testimonies that she intended to create a trust for her protection with a corporate trustee, the court finds that she intended to create a trust, which she has not revoked. Section 541(d) excludes the parcels conveyed to the non-debtor trust from the bankruptcy estate. Because the parcels are not property of the estate, the stay does not apply to that property. As for the motion for relief from the stay with respect to the debtor individually, the court will address the issue in the context of its ruling on the motion to dismiss below.

### b. CadleRock's Motion to Dismiss

Bankruptcy Code Section 1112(b)(1) provides that the court shall dismiss a chapter 11 case "for cause" when dismissal is in the best interest of the creditors. 11 U.S.C. § 1112(b)(1). Section 1121(b)(1) contains a non-exclusive list of causes. 11 U.S.C. § 1112(b)(4). The list does not contain filing in bad faith, the specific ground raised by CadleRock, but lack of good faith

has been held to be a cause for dismissal in this circuit. The Sixth Circuit has held that there is "no substantive difference between the cause requirement for dismissal of a petition under Section 1112(b) and the cause requirement for relief from stay under Section 362(d)(1)." *Laguna Assocs. Ltd. v. Aetna Cas. Sur. Co. (In re Laguna Assocs. Ltd.)*, 30 F.3d 734, 737–38 (6th Cir. 1994). Courts have interpreted section 362(d)(1)'s "for cause" provision to allow a creditor relief from the automatic stay if the bankruptcy case was filed in bad faith. *See, e.g.*, *In re Dupuy*, 308 B.R. 843, 848 (Bankr. E.D. Tenn. 2004); *In re Burrell*, 186 B.R. 230, 235 (Bankr. E.D. Tenn. 1995). Thus, under *Laguna*, a court may dismiss a Chapter 11 case "for cause" upon a finding of bad faith. The court may also consider whether other circumstances exist that are cause for dismissal. "Because the [section 1112(b)(4)] list of grounds is not all-inclusive, the court may consider other grounds as they arise, and may use its equitable powers to reach an appropriate result." NORTON & NORTON, NORTON BANKRUPTCY LAW AND PRACTICE § 103:6 (3d ed. 2011).

   CadleRock argues that the bad faith analysis of *Laguna* should be applied here. In *Laguna*, Beztak Company, a general partnership, received a loan for the purchase and construction of an apartment complex. *Laguna*, 30 F.3d at 736. It was a single asset real estate case. The mortgage expressly prohibited the partnership from transferring the property unless it demonstrated that the transferee met certain credit and experience standards, or at least one of the existing partners retained a five percent ownership interest in the transferee. *Id.* Despite the mortgage's terms, a new partnership was formed that did not meet the mortgagor's conditions. Beztak transferred the apartment complex to the new entity several weeks later. The day after the conveyance, the new entity filed for bankruptcy. *Id.* The Sixth Circuit found that the bankruptcy

9

was not filed in good faith and granted the mortgagor relief from stay, considering the following eight factors in its evaluation:

> 1) the debtor has one asset;
> 2) the pre-petition conduct of the debtor has been improper;
> 3) there are only a few unsecured creditors;
> 4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in court;
> 5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;
> 6) the filing of the petition effectively allows the debtor to evade court orders;
> 7) the debtor has no ongoing business or employees; and
> 8) the lack of possibility of reorganization.

*Id.* at 738 (quoting *In re Charfoos*, 979 F.2d 390, 393 (6th Cir. 1992) (citing *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986))).

CadleRock argues that a sufficient number of the *Laguna* factors are present to support a finding of bad faith. First, it argues, the debtor has just one asset. Second, CadleRock is the debtor's sole creditor. Third, the debtor filed for bankruptcy on the eve of foreclosure. Fourth, CadleRock and the debtor have proceeded to a standstill in state court litigation upon the judgment by the Tennessee Court of Appeals in CadleRock's favor. Fifth, filing the petition allowed the debtor to evade the court-ordered sheriff's sale. Finally, the debtor does not have any employees.

The court recognizes that most of the *Laguna* factors are present, but the strong possibility that this debtor could use its position as trustee to pay this creditor in full stands as a significant distinction between this case and the facts in *Laguna*. If the court had found that the parcels were property of the estate, it would not have found that the filing was in bad faith. *Laguna* requires an inquiry more nuanced than a surface-level tallying of factors. In addition to addressing each factor, the *Laguna* court also weighed

the facts that the property could not support its expenses and that the debtor had undermined the mortgagor's benefit of its bargain. *Laguna*, 30 F.3d at 736–37. Similarly, in *In re Trident Assocs. Ltd.*, another case involving Beztak, the court found bad faith when there was no possible way for the creditor to receive any payments from the debtor. *In re Trident Assocs. Ltd*, 52 F.3d 127, 132 (6th Cir. 1995). Conversely, here the debtor was in a position to dispose of the properties, to sell timber from them, or to lease farm land to make payments. The potential to generate equity worth several times more than the debt owed to CadleRock exists in this case. The properties had the capacity to generate over $300,000 in timber revenue alone. In addition, the *Laguna* court specifically discussed the presence of "new debtor syndrome," in which a single asset entity is created or revitalized on the eve of foreclosure for the sole purpose of isolating the asset from the reach of creditors. *Laguna*, 30 F.3d at 738. This debtor has been in existence since 2010.

"To support a finding of bad faith, the debtor's conduct must have been 'atypical,' and the case must be 'extraordinary.'" *In re Webb MTN, LLC*, No. 3:07-CV-437, 2008 WL 361402 at *3 (E.D. Tenn. Feb. 8, 2008) (citing *Marrama v. Citizens Bank of Massachusetts*, 127 S. Ct. 1105, 1111–12 n.11, 549 U.S. 365, 674 n.11 (2007)). In *Webb*, the debtor had a single member, existed to hold a single piece of property, and had no employees. *Id.* When Webb filed for bankruptcy on the eve of foreclosure, two holders of promissory notes secured by the property and the trustee filed a motion to dismiss. The bankruptcy court found bad faith and dismissed the case. The district court, however, reversed, underscoring the Sixth Circuit's emphasis on the totality of the circumstances approach. *Id.* (citing *Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1032 (6th Cir. 1988)). The *Webb* court articulated

that a consideration of the *Laguna* factors is in fact a two-step process: First, the court must note the presence of the factors, but second, and crucially, the court must also determine whether their presence is relevant to the actual bad faith of the particular debtor before the court. *Id.*

The *Webb* court concluded that despite the presence of a majority of the *Laguna* factors, the case was not filed in bad faith. *Id.* at *4. There was no "new debtor syndrome," and, the court noted, "mere filing by a business or individual in order to avoid foreclosure is, in and of itself, neither atypical nor extraordinary." *Id.* Ultimately, the court summarized *Laguna* as speaking to "'the lack of possibility of reorganization,' rather than prospects that are merely slim." *Id.* at *5.

Based on the distinctions between this case and *Laguna*, and the additional considerations in *Webb*, the court does not find that the case was filed in bad faith. The debtor mistakenly believed that it had a basis for claiming the two parcels were property of the estate. The court finds that there is nothing "atypical" or "extraordinary" about the debtor's filing on the eve of foreclosure. The property in question holds equity well beyond the creditor's claim. If it were part of this estate it would make the possibility of reorganization not only possible, but probable. Furthermore, the "new debtor syndrome" plays no role here: the debtor was formed in 2010 for the purpose of protecting Ms. Dunlap's property, years before the debtor filed for bankruptcy. In sum, although a majority of the *Laguna* factors are indeed present here, the totality of the circumstances would outweigh the presence of the *Laguna* indicia of bad faith.

The court recognizes that its conclusion that the case was not a bad faith filing is a pyrrhic victory for this debtor in light of the court's ruling on property of the estate. The debtor, which had good faith intentions to reorganize BLF's assets and pay CadleRock, unfortunately has nothing to reorganize. At the hearing, the United States Trustee moved to appoint a trustee pursuant to 11 U.S.C. § 1112(b)(1) to pursue a plan that might offer

Ms. Dunlap and CadleRock a mutually agreeable solution. The court finds that solution to be appealing since a prompt, arm's length disposition of the two parcels would likely produce recovery for the creditor and equity for the beneficiary of the trust. However, a bankruptcy trustee can administer only property that is property of the estate. Because there is nothing in this estate except the debtor's legal title to two parcels of real property and no evidence that there is any independent source of income coming to the debtor in its capacity as a trustee, the court finds that cause exists to dismiss the case. 11 U.S.C. § 1112(b)(2) and that dismissal is in the best interest of the single creditor of the estate.

### III.    Conclusion

The court finds that the automatic stay imposed by 11 U.S.C. § 362(a) does not apply to the two parcels of real property owned by BLF. Due to there being no property in this estate to administer, the court finds that cause exists to dismiss the case. The court will grant CadleRock's Motion to Dismiss, which will render the Motion for Relief from the Stay as to the debtor moot.

A separate order will enter.

# # #